# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| JEREMY BROTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:23-cv-00120-MTS |
| | ) | |
| CITY OF DEXTER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Before the Court is Defendant Trevor Pulley and Defendant City of Dexter's Motion for Summary Judgment, seeking "dismiss[al]" of Plaintiff's Petition "in its entirety." Doc. [32] at 2. Plaintiff Jeremy Brotz opposes the Motion, Doc. [37], and the Defendants have filed their Reply in support, Doc. [38]. For the reasons that follow, the Court will grant Defendants' Motion for Summary Judgment in part and deny it in part. The Court grants the Motion with respect to Plaintiff's First Amendment retaliation claim because Plaintiff has failed to put forth sufficient evidence from which a reasonable factfinder could conclude that Defendants' nondiscriminatory justification for Plaintiff's termination—that is, Defendants' good-faith belief that Plaintiff was untruthful during an investigatory interview—was pretextual. However, the Court will require the parties to submit additional summary-judgment briefing to determine whether an entry of summary judgment is appropriate as to Plaintiff's claim that the Dexter Police Department policy prohibiting on-duty Fraternal Order of Police discussions or activities violated Plaintiff's First Amendment rights.

I.    **Statement of Facts[1]**

Until he was fired on April 16, 2020, Plaintiff worked as a police officer for the City of Dexter, Missouri. Doc. [40] ¶¶ 1, 19. While employed, Plaintiff was a known member of the Fraternal Order of Police ("FOP"), and he was known to recruit additional members. Doc. [39] ¶¶ 1–2. Sometime in late 2019, Defendant Trevor Pulley, then-Chief of Police, gave a verbal order to officers within the Dexter Police Department, prohibiting them from discussing the FOP or conducting FOP business while on duty. *Id.* ¶ 6; Doc. [40] ¶¶ 4–5. Plaintiff learned of the order by word-of-mouth and, like other officers, doubted that the order would be enforced. Doc. [37-3] at 3–4; Doc. [40] ¶ 4, Response. Accordingly, Plaintiff and several other officers continued to discuss the FOP and encouraged others to join the organization while on duty. Doc. [39] ¶ 5; Doc. [37-3] at 5–6. Plaintiff sought to establish an FOP lodge within the department and was close to recruiting the required number of members. Doc. [39] ¶¶ 3–4. There is no evidence that FOP discussions or business interfered with police department operations. Doc. [39] ¶ 10.

While on patrol in April 2020, Plaintiff stopped and discussed the topic of unionization at the residence of Doug Cox, an employee in the City's Street Department. Doc. [40] ¶ 7, Response. The record does not reflect how long this interaction lasted, but the two men apparently discussed Plaintiff's interest in forming a union and the fact that City employees had undertaken an unsuccessful unionization effort in the past. Doc. [34-4] at 2. Defendant Pulley was notified of this exchange and asked Captain Hank Trout to conduct an internal investigation to determine whether Plaintiff had violated his FOP-related order. Doc. [40] ¶¶ 8–9. As part of the

---

[1] Unless otherwise stated, the following facts are properly supported and undisputed pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 4.01(E) of the Eastern District of Missouri Local Rules. If genuinely disputed, the facts are viewed in a light most favorable to Plaintiff Brotz.

investigation, Captain Trout interviewed Doug Cox and learned about the on-duty, union-related conversation that had transpired.  Doc. [34-4] at 2.

Plaintiff was placed on administrative leave with pay during the investigation, Doc. [34-7], and he sat for an investigatory interview on or about April 09, 2020, Doc. [34-5].  Plaintiff acknowledged that he was under orders to "provide complete and truthful answers to the investigator" and that, "should [he] fail to answer questions or refuse to provide complete and truthful answers," he could be subject to disciplinary action up to and including dismissal.  Doc. [40] ¶ 11.  During the interview, Captain Trout asked Plaintiff if he had spoken to anyone outside of the police department, including anyone else in the city working for a different department, about unionizing.  Doc. [34-2] at 5; Doc. [40] ¶ 14; Doc. [34-4] at 4.  Plaintiff denied doing so.[2] Doc. [34-2] at 5.  Captain Trout concluded that this was a "false or untrue statement" in his investigation report.  Doc. [34-4] at 4; Doc. [40] ¶ 15.  Accordingly, in addition to finding that Plaintiff was insubordinate for violating Defendant Pulley's order, Captain Trout found that Plaintiff had violated the department's standards of conduct with respect to untruthfulness and perjury.[3] Doc. [34-4] at 4; Doc. [40] ¶ 16.  By the time Plaintiff was placed under investigation, Defendant Pulley had decided that he was going to discipline Plaintiff in some fashion for violating his order.  Doc. [39] ¶ 13.  But after Defendant Pulley learned from Captain Trout that Plaintiff had been untruthful during his investigatory interview, Doc. [37-4] at 8; Doc. [34-1] at 9; Doc. [34-6] (showing an interview date of April 09, 2020), Defendant Pulley made his recommendation

---

[2] At his deposition, Plaintiff admitted that his denial was inaccurate.  Doc. [34-2] at 5.

[3] Captain Trout also determined that Plaintiff gave untrue answers when he denied attending a certain department supervisor meeting at which Defendant Pulley gave his FOP-related order.  Doc. [37-6] at 4.  Plaintiff asserts that his interview answers on this topic were truthful because he did not in fact attend the meeting in question.  *See, e.g.*, Doc. [37-3] at 3 ("I was not in the meeting.").

to the Board of Alderman that they should terminate Plaintiff's employment.  Doc. [34-1] at 6; Doc. [34-7] (recommending Plaintiff's termination on April 16, 2020).

During the Board's April 16, 2020, Executive Session, Defendant Pulley addressed the Board stating that the police department had been investigating Plaintiff for a policy violation, and in his corresponding interview, "[Plaintiff] was untruthful with several of his answers."  Doc. [34-7].  Defendant Pulley explained that he was seeking Plaintiff's termination because he had "be[en] untruthful during an internal investigation."  *Id.*  The City Attorney added that such misconduct "brings up issues of [Plaintiff] being an unreliable source during any police matter that he would be involved in."  *Id.*; Doc. [40] ¶ 19.  Following these remarks, the City Mayor adopted Defendant Pulley's recommendation and placed it before the Board.  Doc. [40] ¶ 18; Doc. [34-7]. The Board unanimously voted to terminate Plaintiff's employment.  Doc. [34-7].

## II.  **Procedural History**

Plaintiff originally filed suit in the Circuit Court of Stoddard County, Missouri, asserting one count of Wrongful Termination against the City of Dexter and Defendant Pulley in both his official and individual capacities.  Doc. [5].  In his Petition, Plaintiff alleges violations of his rights to free association, due process, "and other constitutional rights owed . . . by the First, Fourth, and Fourteenth Amendments of the United States Constitution, and Title I, §§ 9, 10 of the Missouri Constitution."  Doc. [5] ¶¶ 17–18.  He asserts that his "wrongful termination was an adverse employment action . . . [that] violated [his] rights under the Constitution of the United States and the Constitution of the State of Missouri."  *Id.* ¶ 21.  Plaintiff also contends that the "Police Department Policy which limits the free association of individuals such as Plaintiff is unduly restrictive of the constitutional right of freedom of association" and that the policy therefore "represents a constitutional violation resulting from an official municipal policy."  *Id.* ¶¶ 26–27.

- 4 -

For relief, Plaintiff seeks reinstatement, back pay, punitive damages against Defendant Pulley, attorney's fees and costs, and "[s]uch other relief as this Court deems just and proper." *Id.* at 5. On July 12, 2023, Defendants removed the action to this Court pursuant to its federal question jurisdiction. *See* Doc. [1] ¶ 4; *see also* 28 U.S.C. §§ 1331, 1441(a).

Defendants now move for summary judgment on all of Plaintiff's claims under Federal Rule of Civil Procedure 56. Doc. [32]. Characterizing Plaintiff's case as one "expressly for 'wrongful termination,'" Defendants assert that the legality of Defendant Pulley's verbal order "is irrelevant to this case."[4] Doc. [33] at 7. With respect to Plaintiff's termination, Defendants argue Plaintiff's claims against Defendant Pulley fail because he was not the decisionmaker who in fact terminated Plaintiff's employment, Doc. [32] ¶ 3, Defendant Pulley is entitled to qualified immunity, *id.* ¶ 4, and any official-capacity claims against Defendant Pulley are redundant to those asserted against Defendant City of Dexter, *id.* ¶ 5. At bottom, Defendants contend that they are entitled to summary judgment because Plaintiff was not terminated due to his association with the FOP; rather, his termination resulted from Plaintiff's untruthfulness exhibited during his internal-investigation interview. *Id.* ¶ 2; Doc. [33] at 9.

In response, Plaintiff argues that Defendant Pulley *is* liable because he engaged in First Amendment retaliation against Plaintiff, thereby violating Plaintiff's clearly established constitutional rights. Doc. [37] at 7. More specifically, Plaintiff argues that he has asserted a valid claim of First Amendment retaliation because (1) Plaintiff engaged in constitutionally protected activity with respect to the FOP, *id.* at 7–9, (2) his interest in that protected activity outweighed

---

[4] Defendants reemphasize this position in their Reply. *Compare* Doc. [38] at 4 ("The only relevant issue is why [the City] terminated Plaintiff . . . [and] whether the Orders are lawful is irrelevant to his case and the Court need not rule on their legality."), *with id.* at 11 (asserting that the issues of Defendant Pulley's verbal order and Plaintiff's termination "are completely different and only one, the City's termination of Plaintiff's employment, is relevant to [Defendants'] Motion").

the police department's interest in governmental efficiency, *id.* at 10–11, and (3) Defendants' proffered, non-discriminatory reason for Plaintiff's termination was a pretext for unlawful retaliation, *id.* at 12–13.  Plaintiff argues that the City of Dexter is liable because "Defendant Pulley created policy within the Dexter [Police Department]," and therefore, his "actions constitute official and unconstitutional policies of the City of Dexter and the City can be held liable," specifically with respect to "order[ing] the violation of Plaintiff's rights" and "convincing the Board of Alderman to fire Plaintiff." Doc. [37] at 14. [5]

### III.    **Legal Standard**

Federal Rule of Civil Procedure 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The movant bears the initial burden of "informing the district court of the basis for its motion and must identify those portions of the record which it believes demonstrates the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F. 3d 1031, 1042 (8th Cir. 2011) (en banc) (internal quotations omitted) (citation modified).  The movant may satisfy its burden in one of two ways; that is, the movant may either produce evidence negating an essential element of the non-moving party's case, or it may show the non-moving party does not have enough evidence of an essential element of its claims to carry the ultimate burden of persuasion at trial. *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018); *accord* Fed. R. Civ. P. 56(c)(1).

---

[5] Certain allegations in Plaintiff's state-court Petition relate to a potential due process claim. *See, e.g.*, Doc. [5] ¶ 20 (alleging that Plaintiff "has a property interest in continued employment").  To the extent Plaintiff originally intended to assert one, he "failed to make any separate arguments regarding a claim [for violation of due process] in [his] summary judgment resistance briefs." *Paskert v. Kemna-Asa Auto Plaza, Inc.*, 950 F.3d 535, 540 (8th Cir. 2020).  Indeed, Plaintiff "did not oppose the granting of summary judgment on [those] grounds." *Id.*  Accordingly, the Court concludes that there are no due process claims before it.  The Court further "consider[s] [Plaintiff's] claims under state law together with the federal claims" because "the relevant Missouri constitutional provisions are coterminous with their federal counterparts." *Brown v. Precythe*, 46 F.4th 879, 885 n.3 (8th Cir. 2022) (en banc).

Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. *Bedford v. Doe*, 880 F.3d at 97. "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526–27 (8th Cir. 2007). Mere "metaphysical doubt as to the material facts" is not enough; rather, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Torgerson*, 643 F.3d at 1042. The Court views any factual disputes in the light most favorable to the nonmoving party and draws reasonable inferences in the non-movant's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007). When ruling on summary judgment, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## IV.   Discussion

Notwithstanding the breadth of protections that the First Amendment provides to the public at large, the government has a "freer hand" when it regulates the First Amendment conduct of public employees as an employer. *See Waters v. Churchill*, 511 U.S. 661, 671 (1994) (plurality opinion) ("[T]he government as employer indeed has far broader powers than does the government as sovereign."). Still, the First Amendment is violated when, for example, a public employee is retaliated against for engaging in constitutionally protected speech or associational conduct. *See Davison v. City of Minneapolis*, 490 F.3d 648, 654–55 (8th Cir. 2007). To that end, § 1983 provides a federal cause of action against officials acting under color of state law to remedy damages caused by violations of federal constitutional or statutory rights. 42 U.S.C. § 1983.

In response, an individual official can assert the defense of qualified immunity, which provides immunity from suit, *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), when the official's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, an individual official is entitled to qualified immunity unless, "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). Municipalities can be found liable under § 1983 too, but only to the extent "the municipality *itself* causes the constitutional violation at issue." *Rusness v. Becker County*, 31 F.4th 606, 617 (8th Cir. 2022) (quoting *City of Canton v. Harris*, 489, U.S. 378, 385 (1989)). In other words, municipal liability under § 1983 cannot be premised on a theory of vicarious liability such as respondeat superior. *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978).

### A. Defendants are entitled to summary judgment with respect to Plaintiff's First Amendment retaliation claim.

#### 1. Defendant Pulley can be held liable for recommending Plaintiff's termination to the extent his recommendation constitutes unlawful First Amendment retaliation.

The Court begins with Defendants' threshold argument that Defendant Pulley cannot be held liable for damages stemming from Plaintiff's termination because, no matter Defendant Pulley's alleged misconduct, he was not the ultimate decisionmaker who effectuated Plaintiff's termination. Doc. [33] at 13. This argument does not have merit. True, an official's liability in a § 1983 case "requires a causal link to, and direct responsibility for, the deprivation of rights," *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007), that is, "an official is only liable for his own misconduct," *Z.J. by & through Jones v. Kan. City Bd. of Police Comm'rs*, 931 F.3d 672,

688 (8th Cir. 2019). But the Court of Appeals for the Eighth Circuit has explained that there is sufficient causation when an individual sets "in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional injuries on third parties." *Darnell v. Ford*, 903 F.2d 556, 562 (8th Cir. 1990) (citation omitted).

Further, "a government actor may not retaliate against an individual's protected First Amendment activity by exerting influence over [his] employer to cause an adverse employment action." *McNeally v. HomeTown Bank*, 0:21-cv-2614, 2022 WL 2220922, at *9 (D. Minn. June 21, 2022) (collecting cases). Here, it is undisputed that the issue of Plaintiff's termination was placed before the Board of Alderman based solely on the recommendation of Defendant Pulley. Doc. [40] ¶ 19. Therefore, Defendant Pulley *can* be held individually liable for recommending Plaintiff's termination if Defendant Pulley made his recommendation in retaliation against Plaintiff's protected First Amendment activity.[6] The Court therefore proceeds to the merits of Plaintiff's First Amendment retaliation claim.

2. <u>Plaintiff has failed to put forth sufficient evidence establishing a triable question of fact as to his claim of First Amendment retaliation.</u>

To prevail on his First Amendment retaliation claim, Plaintiff must prove "that: (1) [he] engaged in activity protected by the First Amendment; (2) the defendant took an adverse employment action against [him]; and (3) the protected conduct was a substantial or motivating factor in the defendant's decision to take the adverse employment action." *Davison*, 490 F.3d at 655. The third, causation-related element "is a question of fact, but the sufficiency of the evidence

---

[6] However, Defendants are correct that Plaintiff's claims against Defendant Pulley in his official capacity must fail because they are functionally equivalent to those asserted against the City of Dexter. *See, e.g.*, *Marshall v. City of Arnold*, 4:23-cv-00807-MTS, 2024 WL 1217437, at *3 (E.D. Mo. March 21, 2024) (dismissing official capacity claims as "duplicative of Plaintiff's claims against the City"). The Court will therefore grant summary judgment to Defendant Pulley on any claims asserted against him in his official capacity.

to create an issue of fact for the jury is solely a question of law." *Morris v. City of Chillicothe*, 512 F.3d 1013, 1019 (8th Cir. 2008). In the Eighth Circuit, courts "analyze First Amendment employment retaliation claims with a three-step burden-shifting test," commonly referred to as the *McDonnell Douglas* framework.[7] *Id.* at 1018. Under this framework, a plaintiff-employee must "show that he suffered an adverse employment action that was causally connected to his participation in a protected activity." *Id.* at 1019. If the plaintiff is successful, "the burden shifts to the employer to show a legitimate, nondiscriminatory reason for his or her actions." *Id.* If the employer does so, "the burden shifts back to the employee to show that the employer's actions were a pretext for illegal retaliation."[8] *Id.*

Here, Defendants do not dispute that Plaintiff engaged in protected First Amendment conduct when discussing and conducting FOP business while on duty. *Compare Roberts v. Van Buren Pub. Schs.*, 773 F.2d 949, 957 (8th Cir. 1985) (explaining that a public employee's First Amendment right to participate in union activities "may be overridden by the government's interest as an employer in efficiency" when, for example, "the employee engages in the allegedly

---

[7] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *But see Ames v. Ohio Dep't of Youth Servs.*, 145 S. Ct. 1540, 1553 (2025) (Thomas, J., joined by Gorsuch, J., concurring) (opining that the *McDonnell Douglas* framework "is incompatible with the summary-judgment standard"); *id.* at 1545 n.2 (principal opinion) (assuming without deciding that the *McDonnell Douglas* framework applies at the summary-judgment stage of litigation).

[8] Both parties apply this three-part framework in their summary-judgment briefing. *Compare* Doc. [33] at 11, *with* Doc. [37] at 12. The Court agrees that this framework applies here because Plaintiff has not put forth "evidence that directly reflects the use of an illegitimate criterion in [the decision to terminate Plaintiff's employment]." *Graning v. Sherburne County*, 172 F.3d 611, 615 n.3 (8th Cir. 1999); *see Davison*, 490 F.3d at 663–64 (Colloton, J., concurring in the judgment in part and dissenting in part) (explaining that the *Mt. Healthy* mixed-motive framework—placing the burden of proof on the defendant employer "to show as a matter of law that he would have made the same decision absent the plaintiff's protected activity"—is used "only where a plaintiff produces 'direct evidence,'" that is, "evidence showing a specific link between the alleged discriminatory animus and the challenged decision"); *but see Wagner v. Jones*, 664 F.3d 259, 270 (8th Cir. 2011) (explaining that the *McDonnell Douglas* framework applies in Title VII cases, but the *Mt. Healthy* framework applies in First Amendment retaliation cases). Although the Eighth Circuit has given "inconsistent guidance" in this area, *Mahn v. Jefferson County*, 891 F.3d 1093, 1097 (8th Cir. 2018), the Court follows the earlier *Graning* approach, *see Junk v. Terminix Int'l Co.*, 628 F.3d 439, 446 (8th Cir. 2010) (explaining that "the better practice normally [is] to follow the earliest opinion, as it should have controlled the subsequent panels that created the conflict.").

protected activities on the job, interfering with his duties" (citation modified)), *with* Doc. [39] ¶ 10 (admitting, for purposes of their instant Motion, that there is no evidence that FOP discussions or business interfered with Dexter Police Department operations).  Moreover, it is undisputed that Plaintiff suffered an adverse employment action when he was fired from his position as a police officer. *See Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 999 (8th Cir. 2011) ("Unquestionably, termination is an adverse employment action.").  Therefore, the Court proceeds to the third element of Plaintiff's First Amendment retaliation claim, analyzed under the "three-step burden-shifting test" outlined above.  *Morris*, 512 F.3d at 1018.

     a.  <u>Plaintiff has put forth sufficient prima facie evidence that his termination was causally related to his FOP activity.</u>

Defendants first argue that Plaintiff's claim fails at the first step because he has failed to show any causal nexus between his FOP-related activity and his termination. According to Defendants, "the uncontroverted evidence is that [Plaintiff's] termination was . . . [due to] Plaintiff giving false/untruthful statements in his internal investigation interview."  Doc. [33] at 9.  But Plaintiff directs the Court to undisputed facts that Defendant Pulley placed Plaintiff under an internal investigation in response to being told that Plaintiff conducted FOP activities while on duty,[9] Doc. [39] ¶ 8, and Defendant Pulley was prepared to discipline Plaintiff in some fashion for undertaking those activities, *id.* ¶ 13.  Moreover, Plaintiff argues that the evidence supports an

---

[9] On its own, an employee's placement under internal investigation while on administrative leave with pay does not constitute an adverse employment action for purposes of a retaliation claim.  *See Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1008 (8th Cir. 2012) (explaining, in the context of a claim of Family and Medical Leave Act retaliation, that "[p]lacement on paid administrative leave pending an investigation does not meet th[e] standard" of an adverse employment action); *see also Altonen v. City of Minneapolis*, 487 F.3d 554, 560 (8th Cir. 2007) ("Internal investigations into employee complaints are not adverse employment actions when they do not result in any change in form or condition to the employee's employment.").  Instead, material alterations in employment that occur *as a result* of such an investigation are actionable.  *See Ware v. Billington*, 344 F. Supp. 2d 63, 76 (D.D.C. 2004) ("[A]lthough the discipline imposed as a result of an investigation may have a sufficiently adverse effect on plaintiff's employment to be actionable, the mere initiation of the investigation does not.").

inference of retaliation because Plaintiff was terminated just as he was reaching the number of recruits necessary to establish an FOP lodge in the department, and since his termination, all FOP activity in the department has ceased.  *Id.* ¶¶ 4, 14; Doc. [37] at 12.  Taken together, the Court concludes that Plaintiff has put forth sufficient, prima facie evidence that his termination was "causally connected to his participation in a protected activity."  *Morris*, 512 F.3d at 1019; *see also Brown v. City of Jacksonville*, 711 F.3d 883, 893 (8th Cir. 2013) (finding "sufficient evidence of a causal link between [plaintiff's] protected activity and her materially adverse employment action," in the context of a Title VII case, where plaintiff's termination resulted from a workplace investigation brought about because of her protected conduct).

     b. <u>Defendants have put forth a legitimate, nondiscriminatory justification for Plaintiff's termination</u>.

The Court thus proceeds to the second step and considers whether Defendants have put forth "a legitimate, nondiscriminatory reason" for Plaintiff's termination.  *Morris*, 512 F.3d at 1019.  Defendants' proffered reason is the untruthfulness that Plaintiff reportedly exhibited during his internal-investigation interview, especially when he wrongly denied speaking to anyone outside of the police department about unionizing.[10]  Doc. [33] at 9; Doc. [34-7] (recommending termination "for the reason of being untruthful during an internal investigation").  Such misconduct has special significance where police officers are concerned because they are often called as witnesses for the prosecution in criminal cases.  *See Nagel v. City of Jamestown*, 952 F.3d 923, 929 n.5 (8th Cir. 2020) ("[T]he prosecution must disclose in a criminal case evidence that would

---

[10] Plaintiff's denial that he attended a certain police department meeting also contributed to the termination decision. *Compare* Doc. [34-4] at 4 (concluding that Plaintiff "made false or untrue statements . . . by not disclosing that he had attended a supervisors' meeting"), *with* Doc. [34-7] (reflecting Defendant Pulley's belief that Plaintiff "was untruthful with several of his answers" in his internal investigation).  It is of no moment that the parties dispute whether Plaintiff in fact attended this meeting—and thus, whether Plaintiff actually lied to Captain Trout when he denied being there—because the relevant question "is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge."  *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1002 (8th Cir. 2012).

impeach its witnesses, such as a testifying police officer's prior untruthfulness." (citing *Giglio v. United States*, 405 U.S. 150 (1972))).

But even as a general matter, "an employer's belief that the employee committed misconduct is a legitimate, non-discriminatory reason for adverse action." *Richey v. City of Independence*, 540 F.3d 779, 784 (8th Cir. 2008); *see also Hanson v. Mental Health Res., Inc.*, 948 F. Supp. 2d 1034, 1045 (D. Minn. 2013) ("Employee dishonesty is a legitimate non-discriminatory reason for terminating an employee." (citing *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 284 (6th Cir. 2012)));   After all, "[a]n employee who engages in protected activity is not insulated from adverse action for violating workplace rules." *Richey*, 540 F.3d at 784.  The adverse action must be based on the employer's "good faith belief that the employee engaged in misconduct." *Id.*  Thus, "[t]he relevant inquiry is whether the employer *believed* the employee was guilty of the conduct justifying discharge." *Id.*  "Admission of misconduct provides sufficient foundation for an employer's good faith belief that an employee has engaged in misconduct." *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989).

Here, it is undisputed that, at the time of his investigation interview, Plaintiff signed a document that required him to give "complete and truthful answers" to the questions asked of him during his interview and warned that failure to do so could result in disciplinary action up to and including termination.  Doc. [34-5].  Further, no one disputes that, during the corresponding internal investigation, Captain Trout interviewed several disinterested witnesses and reviewed documentary evidence from which he concluded that Plaintiff answered several interview questions untruthfully.  *See generally* Doc. [34-4] (describing the review of timesheets and a social-media message as well as summaries of several interviews); Doc. 40 ¶¶ 15–16 ("[It is u]ncontroverted that Captain Trout made those conclusions . . . .").  Indeed, Plaintiff has since

admitted that he wrongly denied discussing unionization with at least one individual outside of the police department during his interview.[11]  Doc. [40] ¶ 13; Doc. [34-2] at 5.  Plaintiff's admission— in addition to the evidence identified in Captain Trout's investigation report—establishes "some independent corroboration" supporting Defendants' good faith belief that Plaintiff engaged in misconduct.[12]  *Richey*, 540 F.3d at 785.  Therefore, "to avoid summary judgment on his First Amendment retaliation claim, [Plaintiff] must present additional evidence that [Defendants'] explanation is pretextual, and that [Defendant Pulley] really acted because of [Plaintiff's] protected activity."  *Id.*

> c.   Plaintiff has failed to put forth sufficient evidence to create a triable question of fact of whether Defendants' justification for his termination was pretextual.

A showing of pretext requires "sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination [or retaliation] was the real reason."  *Winters v. Deere*, 63 F.4th 685, 690 (8th Cir. 2023).  This is often accomplished by showing that the employer "(1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision."  *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010).  In any event, "showing that a defendant's justification for firing is unworthy of credence is harder to overcome than the prima facie case because evidence of pretext is viewed in the light of the employer's justification."  *Morris*, 512 F.3d at 1019.

---

[11] Plaintiff's attempt to characterize his misrepresentation, *see Misrepresentation*, *Black's Law Dictionary* (12th ed. 2024) ("[A] materially incorrect, unfair or false statement; an assertion that does not accord with the facts."), as an innocent misrecollection made "with[out] the benefit of reviewing information" is unavailing.  Doc. [37-1] ¶ 13.  As mentioned above, the relevant inquiry is not whether Plaintiff was in fact untruthful during his interview, "but whether the employer in good faith believed that the employee was guilty of the conduct."  *Said v. Mayo Clinic*, 44 F.4th 1142, 1151 (8th Cir. 2022).

[12] In addition, Defendants' "finding that [Plaintiff] had been dishonest, even if wrong, made him a Giglio-impaired officer because prosecutors would now be required to disclose the finding any time he testified."  *Nagel*, 952 F.3d at 931.

To establish pretext, Plaintiff directs the Court to the following facts: (1) that "Plaintiff was not the only officer . . . who was discussing the FOP while on duty, Doc. [37] at 12; (2) that Plaintiff was close to recruiting the required number of FOP members to open a lodge in the department, Doc. [39] ¶ 4, and after his termination, any conversation and recruitment activity concerning the FOP stopped, *id.* ¶ 14; and (3) "Defendant Pulley had predetermined that Plaintiff was going to be disciplined for talking to Doug Cox about the FOP," Doc. [37] at 13; Doc. [39] ¶ 13. In addition, Plaintiff asserts that he was not in fact untruthful during his investigation interview. According to Plaintiff, the question at issue—whether he spoke to anyone outside of the police department about unionizing—was vaguely worded and "did not trigger in Plaintiff's mind a memory" of the conversation he had with Doug Cox. Doc. [37] at 13.

As an initial matter, Plaintiff has not put forth evidence that Defendants either failed to follow their established policies or that their explanation for his termination has shifted over time. *See Lake*, 596 F.3d at 874. With respect to the evidence that Plaintiff *does* cite, the Court must view it in light of Defendants' justification for his termination—that is, the finding that Plaintiff was untruthful during his internal investigation interview—and here, Plaintiff has admitted to making a false statement during those proceedings. Doc. [34-2] at 5. What is more, failing to "provide complete and truthful answers to questions" asked of him during his interview subjected him to the risk of "disciplinary action . . . including but not limited to, dismissal from [his] employment." Doc. [34-5]. Plaintiff therefore has failed to show that Defendants' "articulated reason for the adverse employment action was false." *Winters*, 63 F.4th at 690; *see also, e.g.*, *Crawford v. Dep't of Investigation*, 1:05-cv-05368-KMW, 2007 WL 2850512, at *6 (S.D.N.Y. Oct. 1, 2007) (finding no pretext where plaintiff's "own deposition testimony" confirmed defendant's asserted reason for his termination).

Still, a plaintiff can establish pretext by putting forth evidence that his or her employer treated employees who engaged in similar misconduct more leniently. *See Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 904–05 (8th Cir. 2015). Plaintiff attempts to demonstrate disparate treatment by establishing that he alone was singled out for discipline even though other officers violated Defendant Pulley's order and discussed the FOP while on duty. *Compare* Doc. [39] ¶ 5, *with id.* ¶ 7, *and id.* ¶ 9. Plaintiff's argument is unavailing because he does not show that these purported comparators "were similarly situated in *all* relevant respects." *Walker v. First Care Mgmt. Grp.*, 27 F.4th 600, 605 (8th Cir. 2022). This includes showing that the comparators were treated more leniently despite "engag[ing] in the same conduct without any mitigating or distinguishing characteristics." *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2015) (en banc) (finding no pretext where plaintiff failed to put forth a comparator who engaged in the same misconduct that served as the basis for plaintiff's termination). Because Plaintiff puts forth no evidence that other Dexter Police Department officers were treated less harshly after they made, or were perceived to have made, false statements during an investigatory interview, he has failed to put forth sufficient evidence from which a reasonable jury could conclude that Plaintiff's FOP activity "*really* motivated the [termination] decision" and that Plaintiff's untruthfulness during his interview "was just an excuse for the decision to fire [him]." *Huber v. Westar Foods, Inc.*, 139 F.4th 615, 625 (8th Cir. 2025) (en banc).

The rest of Plaintiff's pretext-directed evidence is prima facie evidence tending to show "a causal connection between [Plaintiff's] protected activity and the adverse employment action." *Graning*, 172 F.3d at 615. But under the *McDonnell Douglas* framework, "[p]roof of pretext, *coupled* with a strong prima facie case, may suffice to create a triable question of fact." *Torgerson*, 643 F.3d at 1046 (emphasis added). Therefore, because Plaintiff has failed to present sufficient

evidence from which a reasonable fact finder could conclude that Defendants' proffered reason for his termination was pretext for unlawful retaliation, Plaintiff has failed to carry his summary-judgment burden, and the Court will grant Defendants' Motion with respect to Plaintiff's First Amendment retaliation claim.

**B. The Court will require supplemental briefing to determine whether summary judgment is appropriate as to Plaintiff's claim that Defendant Pulley's departmental order unconstitutionally violated his First Amendment Rights.**

A fair read of Plaintiff's state-court Petition shows that he has asserted a claim against Defendants for establishing an unconstitutional policy that violated Plaintiff's First Amendment rights. *See* Doc. [5] ¶¶ 6, 10–11, 19, 26–27. It is axiomatic that the "function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds of a claim." *Topichan v. JP Morgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (internal quotations omitted). "The well-pleaded facts alleged in the complaint, not the legal theories of recovery or legal conclusions identified therein, must be viewed to determine whether the pleading party . . . stated a claim." *Id.*; *see* Charles E. Clark, *Pleading under the Federal Rules*, 12 Wyo. L.J. 177, 191-92 (1958) (explaining that pleadings should "just say what plaintiff and defendant did," and if a party does "give [legal] labels" or includes "a little theory" in his pleading, it is "not binding" but rather just "a way of being helpful").

Where, as here, a plaintiff asserts that a municipal policy itself violates the constitution, "no evidence is needed other than a statement of the municipal policy and its exercise." *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 390 (8th Cir. 2007) (en banc) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23 (1997) (plurality opinion)). In addition, "[g]overnmental officials may . . . be held personally liable in damages for constitutional infringements resulting from their establishment of unconstitutional policies." *Haynesworth v. Miller*, 820 F.2d 1245, 1263 (D.C.

Cir. 1987). Because Plaintiff's Petition alleges the issuance of a municipal policy that violated his First Amendment rights, his Petition states a plausible claim for damages caused by the constitutional violation itself.[13] *See* Doc. [5] ¶¶ 6, 10–11, 19, 26–27; *id.* at 5 (seeking "[s]uch other relief as this Court deems just and proper"); *cf. Memphis Cmty. Sch. Dist. v. Statura*, 477 U.S. 299, 307, 308 n.11 (1986) (explaining that "the basic purpose of § 1983 damages is to compensate persons for injuries that are caused by the deprivation of constitutional rights" and "nominal damages . . . are the appropriate means of vindicating rights whose deprivation has not caused actual, provable injury" (internal quotations omitted)). Therefore, contrary to Defendants' repeated assertions, the constitutionality of Defendant Pulley's order *is* relevant to this case.

A First Amendment violation occurs when a municipal policy unreasonably burdens the First Amendment rights of public employees. *See Int'l Ass'n of Firefighters, Local No. 3808 v. Kansas City*, 220 F.3d 969, 975 (8th Cir. 2000). When courts in the Eighth Circuit review such policies, they apply "an intermediate level of scrutiny" and determine whether "the government's determination . . . [to prohibit the protected conduct] is reasonable." *Id.* at 973 (explaining that the considerations of "[t]he *Pickering* balance" should inform the analysis).[14] "When the government determines that its interests in the efficient and effective provision of public services require infringement of its employees' associational rights, [courts] cannot simply defer to the government's decision," but they must "examine its justification, and considering the competing interests, determine whether the government's determination is reasonable." *Id.* at 974. True, "police departments . . . are given more latitude in their decisions regarding discipline and

---

[13] Because the Court will grant summary judgment for Defendants on Plaintiff's First Amendment retaliation claim, any damages that stem from his termination are unavailable because, as the Court found above, they were not caused by a constitutional violation.

[14] *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) (balancing the government's interests in efficiency against the public employee's interest in First Amendment activity).

personnel regulations than an ordinary government employer," *Tindle v. Caudell*, 56 F.3d 966, 971 (8th Cir. 1995), and a police department's assessment of "the potential for disruption . . . as well as [its] response to actual or perceived disruption, are entitled to 'considerable judicial deference,'" *Tyler v. City of Mountain Home*, 72 F.3d 568, 570 (8th Cir. 1995) (quoting *Shands v. City of Kennett*, 993 F.2d 1337, 1345 (8th Cir. 1993)). But before a court can undertake this analysis, the government must put forth evidence supporting its justification; that is, a governmental employer must put forth more than "[m]ere allegations" or "conclusory statements" of actual or anticipated disruption. *See Sexton v. Martin*, 210 F.3d 905, 912–13 (8th Cir. 2000) (withholding qualified immunity from department of public safety officials); *accord Henry v. Johnson*, 950 F.3d 1005, 1011 (8th Cir. 2020) ("Where there is no evidence of disruption . . . there are no government interests in efficiency to weigh against First Amendment interests.").

Here, undoubtedly because Defendants concluded that the constitutionality of Defendant Pulley's verbal order was a "red herring" and "irrelevant to this case," Doc. [33] at 7, they have failed to put forth evidence of any real or perceived disruption to Dexter Police Department operations that would justify Defendant Pulley's content-based restriction of his officers' First Amendment activity, Doc. [39] ¶¶ 6, 10 (admitting, for purposes of the instant Motion, that there is no evidence that FOP discussions or business interfered with Dexter Police Department operations).[15] Thus, the Court is unable to determine whether summary judgment is appropriate as to this claim. The Court will therefore require supplemental summary-judgment briefing from the parties as to whether there are undisputed facts demonstrating that Defendant Pulley's verbal

---

[15] Defendants' blanket assertion that the department's interests "clearly" outweighed any employee interests with respect to "on duty restrictions," Doc. [33] at 9, is both improperly supported, *see Sexton*, 210 F.3d at 912 (conclusory statements unsupported by evidence are insufficient), and incorrect, at least as a general proposition, *see, e.g.*, *Beach v. City of Olathe*, 185 F. Supp. 2d 1229, 1239 (D. Kan. 2002) ("[T]he court concludes that plaintiff's interest in engaging in his speech and associational activities, whether on-duty or off-duty, outweighs [the police department's] interest in regulating the speech and activities.").

order was a reasonable response to actual or anticipated disruption to the efficiency of the Dexter Police Department's operations. *See* Fed. R. Civ. P. 56(e) (providing "[i]f a party fails to properly support an assertion of fact . . . the court may (1) give an opportunity to properly support or address the fact; . . . or (4) issue any other appropriate order").

In addition, the parties' supplemental briefing should address whether, under Missouri state or local law, Defendant Pulley can be considered an authorized policymaker of the City of Dexter such that his departmental order would support a finding of municipal liability. *See Schaffer v. Beringer*, 842 F.3d 585, 596 (8th Cir. 2016) (clarifying that "[t]o prove the existence of a policy, a plaintiff must point to an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters"); *accord Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."). Whether Defendant Pulley acted "with final policymaking authority for the local government" is a determination the Court must make as a matter of law, considering "(1) state and local positive law and (2) state and local custom or usage having the force of law." *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1215 (8th Cir. 2013) (internal quotations omitted).

## V.   Conclusion

Therefore, the Court will grant summary judgment in favor of Defendants on Plaintiff's First Amendment retaliation claim. However, the Court will require supplemental summary-judgment briefing to determine whether summary judgment is appropriate as to Plaintiff's claim that Defendant Pulley imposed an unconstitutional departmental policy that violated Plaintiff's First Amendment rights.

Accordingly,

- 20 -

**IT IS HEREBY ORDERED** that, consistent with this Memorandum and Order, Defendant Trevor Pulley and Defendant City of Dexter's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Defendants shall file supplemental summary-judgment briefing, consistent with this Memorandum and Order, no later than thirty (30) days from the date below. Defendants' Memorandum of Law shall not exceed ten (10) numbered pages, exclusive of the Table of Contents, Table of Authorities, signature page, and attachments. Defendants' briefing shall otherwise comply with Local Rule 4.01. *See* E.D. Mo. L.R. 4.01(E).

**IT IS FURTHER ORDERED** that Plaintiff shall file his Response in Opposition to the arguments raised in Defendants' supplemental briefing no later than twenty-one (21) days after the supplemental briefing is filed. The Response shall not exceed ten (10) numbered pages, exclusive of the Table of Contents, Table of Authorities, signature page, and attachments. Plaintiff's response shall otherwise comply with Local Rule 4.01. *See* E.D. Mo. L.R. 4.01(E).

**IT IS FINALLY ORDERED** that Defendants shall file their Reply in Support no later than ten (10) days after Plaintiff files his Response in Opposition. Defendants' Reply shall not exceed six (6) numbered pages, exclusive of any Table of Contents, Table of Authorities, signature page, and attachments. Defendants' Reply shall otherwise comply with Local Rule 4.01.

Dated this 28th day of July 2025.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE