UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

JEREMY BROTZ,                              )
                                           )
        Plaintiff,                         )
                                           )
    vs.                                    )        Case No. 1:23-cv-00120-MTS
                                           )
CITY OF DEXTER, *et al.*,                  )
                                           )
        Defendants.                        )

**MEMORANDUM AND ORDER**

Before the Court is Defendant Trevor Pulley and Defendant City of Dexter's now-supplemented Motion for Summary Judgment on Plaintiff's claim that Defendants violated his First Amendment rights when they adopted an unconstitutional policy within the police department.  Docs. [37], [44].   The Motion is fully briefed and ready for decision.  *See* Docs. [46] and [47].  For the reasons that follow, the Court will grant Defendants' Motion and enter judgment in their favor.

I.    BACKGROUND

The Court has set forth many of the undisputed facts and much of the procedural history for this matter elsewhere.  *See* Doc. [43] at 2–6; 2025 WL 2106972, at *2–3.  In that prior Memorandum and Order, the Court granted Defendants' Motion for Summary Judgment with respect to Plaintiff's First Amendment retaliation claim.  Doc. [43] at 16–17.  The Court reasoned that summary judgment was proper because Plaintiff failed to put forth sufficient evidence of pretext given Defendants' legitimate, nonretaliatory justification for Plaintiff's termination; namely, Defendants' good-faith belief that Plaintiff

lied during an internal investigation interview. *Id.* at 12–17; *see also Thomas v. Marshall Pub. Schs.*, 152 F.4th 884, 892 (8th Cir. 2025) ("[A]n intervening event that *independently* justified adverse disciplinary action can sever any inference that protected activity caused the adverse action." (internal quotations omitted)).

The Court also concluded that a fair read of Plaintiff's state-court Petition showed an additional First Amendment claim alleging that, when Defendant Pulley issued his verbal order that prohibited officers from discussing or handling Fraternal Order of Police ("FOP") business while on duty, Doc. [39] ¶ 6; Doc. [40] ¶¶ 4–5, he established an unconstitutional policy that violated Plaintiff's First Amendment rights, Doc. [43] at 17–18.  Because Defendants did not address this claim in their initial summary-judgment briefing, the Court ordered supplemental briefing that, at a minimum, needed to address two issues: (1) whether undisputed facts demonstrated "that Defendant Pulley's verbal order was a reasonable response to actual or anticipated disruption to the efficiency of the Dexter Police Department's operations"; and (2) whether "Defendant Pulley can be considered an authorized policymaker of the City of Dexter such that his departmental order would support a finding of municipal liability." *Id.* at 19–20 (citing Fed. R. Civ. P. 56(e)).

To comply, the parties have supplemented the record with the following facts.[1]  As of 2019, the City of Dexter ("City") Police Department's productivity levels—specifically,

---

[1] Unless otherwise stated, the following facts are properly supported and uncontroverted pursuant to Rule 56(c) of the Federal Rules of Civil Procedure and Rule 4.01(E) of this Court's Local Rules. "All matters set forth in [Defendants'] Statement of Uncontroverted Material Facts [have been] deemed admitted for purposes of summary judgment unless specifically controverted by [Plaintiff]."  E.D. Mo. L.R. 4.01(E).

the number of "self-initiated tickets, arrests and reports"—were low.  Doc. [45] ¶ 1.  The City Administrator attributed these low numbers to the fact that police officers were handling non-police matters while on duty, Doc. [45] ¶ 2, "including [FOP business]," Doc. [45-1] at 3.  He complained about it to Defendant Pulley, then-Chief of Police, Doc. [45] ¶ 3, who himself noticed that officers "were spending significant time doing non-police activities instead of patrolling the City."  Doc. [45] ¶ 4.  To the best of Defendant Pulley's recollection, the City Administrator contacted Pulley and instructed him to put a stop to on-duty, FOP-related discussions and activities because productivity numbers were down.  Doc. [45-1] at 3–4.   Subsequently, according to Defendant Pulley, he "relayed the information to all the officers," telling them, "please do police work while you're working.  When you're off if you wish to do FOP duty that's fine, it's a good organization, it gives you benefits.  Do it off duty, not on duty . . . ."  *Id.* at 4.[2]  Prior to that directive, Plaintiff undertook FOP organizing activities while on duty and used police-department equipment to do so.  Doc. [45] ¶ 5; Doc. [46-1] ¶ 5; Doc. [45-3] at 2–3.  Afterward, Plaintiff continued to conduct FOP business while on duty because he believed Defendant Pulley's statement to be an unlawful order.  Doc. [45-3] at 2–3.  For example, while Plaintiff was on patrol, he stopped at the home of a city employee and discussed FOP organizing.  Doc. [45-3] at 3.  Also while on duty, Plaintiff assisted fellow on-duty officers in locating and completing FOP applications.  Doc. [37-3] at 5–6.

---

[2] According to Defendant Pulley, these instructions—i.e., to reserve on-duty time for policework—were given repeatedly at departmental meetings because, for a short time after each one, productivity numbers would slightly improve.  Doc. [45-1] at 2.

Additionally, the parties have provided information about the City's governing structure and the authority of its officials.  For example, pursuant to City ordinance, "[t]he Chief of Police is the director of the Police Department . . . [and has] direct control of the department, subject to the supervision of the City Administrator and subject to other rules, regulations and orders as the City Administrator will prescribe."  Doc. [46-1] ¶ 7 (citing Dexter, Mo., City Code § 200.040)).  The City Administrator, in turn, is empowered "to prescribe such rules and regulations . . . [deemed] necessary or expedient for the conduct of administrative agencies subject to his/her authority," and can "overrule any action taken by a department head and may supersede him/her in the functions of his/her office."  Doc. [46-4] (Dexter, Mo., City Code § 115.220).  The City Administrator may also "revoke, suspend, or amend any rule or regulation of the administrative service except those prescribed by the Board of Aldermen."  *Id.*  Despite these significant powers, the City Administrator "serve[s] at the pleasure of the appointing authority," and as a result, the City Administrator may be removed by the mayor "with the consent of a majority of the Board of Aldermen," or, in any event, by a two-thirds majority of the Board.  Dexter, Mo., City Code § 115.200.

Against this backdrop, Defendants seek summary judgment once more.  They argue that Defendant Pulley's verbal order cannot constitute a First Amendment violation under the facts of this case.  Doc. [44] at 4–5.  Defendants assert the order was a reasonable response to either actual or anticipated disruption to the efficiency of the Police Department, especially because it is undisputed that police productivity numbers suffered from the fact that officers undertook non-police activities while they were on duty, FOP

- 4 -

activities included.   Doc. [45-1] at 3–4.   Defendants emphasize Plaintiff's own acknowledgement that he was not engaged in law enforcement when conducting FOP business.  *See* Doc. [44] at 4–5; *see also* Doc. [45-3] at 2–3.  The bottom line, according to Defendants, is that Plaintiff's on-duty, FOP-related conduct per se interfered with his police duties because Plaintiff could not perform both at the same time.  Doc. [44] at 4–5. Further, even if the order violated the First Amendment, Defendants reassert Defendant Pulley's entitlement to qualified immunity because, whatever the First Amendment's requirements in the context of a police department's regulation of on-duty conduct, those requirements have not been clearly established.  *See* Doc. [44] at 3 n.1; *see also* Doc. [33] at 13–14.  Finally, Defendants argue that municipal liability against the City is unavailable because Defendant Pulley was not an official policymaker.  Doc. [44] at 5–6.

Plaintiff disagrees.  He argues that there is no evidence that either his or anyone else's FOP activity disrupted Department operations.  Doc. [46] at 3–4.  Even though evidence in the record indicates that there was a department-wide productivity issue, Plaintiff asserts that the order prohibiting on-duty FOP business cannot have been a reasonable response to address that issue because the order "appears to target only Plaintiff."  *Id.* at 4.   In addition, Plaintiff argues that the City *can* be held liable for Defendant Pulley's order because it was issued at the City Administrator's direction.  *Id.* at 5–6.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  "The movant bears the initial responsibility of informing the district court of the basis for its motion and must identify the portions of the record that it believes demonstrate the absence of a genuine dispute of material fact." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing *Torgerson v. City of Rochester*, 643 F. 3d 1031, 1042 (8th Cir. 2011) (en banc)); *accord* Fed. R. Civ. P. 56(c)(1).  Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## III.   DISCUSSION

Based on the summary judgment record, the Court concludes that Defendants have the better part of the argument.  Government employees cannot claim constitutional protection for all conduct undertaken in the name of union activity.  *See Hanover Twp. Fed'n of Tchrs. v. Hanover Cmty. Sch. Corp.*, 457 F.2d 456, 460 (7th Cir. 1972) (Stevens, J.); *Int'l Ass'n of Firefighters, Local No. 3808 v. Kansas City*, 220 F.3d 969, 972–73 (8th Cir. 2000).  Under the appropriate balance, and given the "considerable judicial deference" owed under the circumstances, *Tyler v. City of Mountain Home*, 72 F.3d 568, 570 (8th Cir. 1995) (quoting *Shands v. City of Kennett*, 993 F.2d 1337, 1345 (8th Cir. 1993)), the verbal order at issue in this case did not violate Plaintiff's First Amendment rights.

As a public employee, Plaintiff must "accept certain limitations on [his] freedom because the government has valid interests as an employer in regulating [his First Amendment conduct]." *Melton v. City of Forrest City*, 147 F.4th 896, 902 (8th Cir. 2025)

- 6 -

(internal quotations omitted).   However, a constitutional violation occurs when the government unreasonably burdens the First Amendment rights of its public employees. *See Int'l Ass'n of Firefighters*, 220 F.3d at 975.  Determining whether a particular rule or regulation imposes an unreasonable burden depends on "a balance between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 465–66 (1995) (quoting *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968)) (citation modified).

The same balance applies when a rule or regulation restricts a public employee's associational rights.  *See Roberts v. Van Buren Pub. Schs.*, 773 F.2d 949, 957 (8th Cir. 1985) ("As in the case of speech . . . an associational right must be balanced against, and may be overridden by, the government's interest as an employer in efficiency."); *Int'l Ass'n of Firefighters*, 220 F.3d at 973.  When courts perform this analysis, they "cannot simply defer to the government's decision" to enact the relevant restriction; rather, courts must "examine its justification, and considering the competing interests, determine whether the government's determination is reasonable." *Int'l Ass'n of Firefighters*, 220 F.3d at 974. Relevant factors include whether the First Amendment conduct at issue "creates disharmony in the workplace, impedes the speaker's ability to perform his duties or impairs working relationships with other employees." *Sexton v. Martin*, 210 F.3d 905, 911 (8th Cir. 2000) (quoting *Kincade v. Blue Springs*, 64 F.3d 389, 395 (8th Cir. 1995)).

The government's interests as a public employer are particularly significant when regulating its public employees' on-the-job conduct. *See, e.g.*, *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 987 (3d Cir. 2014) (recognizing the government's interest "in maintaining control over [its] employees' words and actions for the proper performance of the workplace"). And "[b]ecause police departments function as paramilitary organizations charged with maintaining public safety and order, they are given more latitude in their decisions regarding discipline and personnel regulations than an ordinary government employer." *See Tindle v. Caudell*, 56 F.3d 966, 971 (8th Cir. 1995); *accord Hicks v. Ill. Dep't of Corr.*, 109 F.4th 895, 901–02 (7th Cir. 2024); *cf. Gilligan v. Morgan*, 413 U.S. 1, 10 (1973) (noting it is "difficult to conceive of an area of governmental activity in which the courts have less competence" than the "complex subtle, and professional decisions" surrounding the "composition" and "control" of a military force). When balancing the relevant interests as described above, a police department's assessment of "the potential for disruption . . . as well as [its] response to actual or perceived disruption, are entitled to 'considerable judicial deference.'" *Tyler*, 72 F.3d at 570 (citation omitted).

Of course, those departments must still produce evidence supporting their justification. A public employer must put forth more than "[m]ere allegations" or "conclusory statements" of actual or anticipated disruption. *See Sexton*, 210 F.3d at 912–13 (withholding qualified immunity from department of public safety officials). But, even so, either "actual disruption" or "a reasonable belief in the potential for disruption . . . is usually enough when the government entity is a public safety organization." *Melton*, 147 F.4th at 903. Such is the case here.

- 8 -

It is undisputed that, at the time Defendant Pulley issued his verbal order, the City police department's productivity numbers were down because its officers used on-duty time to complete non-work-related activities. Doc. [45-2] ¶ 3; Doc. [45] ¶ 1.[3] FOP-related activities were one such example. Doc. [45-1] at 3–4. Plaintiff took part in those activities while on duty, Doc. [45-3] at 2–3, as did several other officers, Doc. [39] ¶ 5; Doc. [37-3] at 5–6. Plaintiff makes the unremarkable admission that these union-related activities are mutually exclusive of law-enforcement work. In other words, engaging in one takes an officer away from the other. At the City Administrator's direction, Defendant Pulley gave a verbal order aimed at these circumstances; that is, City police officers could not engage in FOP business while on duty. Doc. [45-1] at 4.

The Court concludes that this is the type of "actual or perceived disruption" that is "entitled to considerable judicial deference." *Tyler*, 72 F.3d at 570. In the first place, it was reasonable for City officials to conclude that, when officers perform non-police-related activities on departmental time, the efficiency of the police department suffers. Given the evidence cited above, their assessment—itself supported by "common sense and human experience," *HCP of Ill., Inc. v. Farbman Grp. I, Inc.*, 978 F. Supp. 2d 943, 946 n.1 (N.D. Ill. 2013) (remarking that judges "are not to ignore" such qualities, even "in summary judgment proceedings"),—is premised on more than "mere allegations" or "conclusory statements." *See Sexton*, 210 F.3d at 912–13. As such, when balancing the City's interests as an employer against those of Plaintiff and his fellow officers, the impediment-to-official-duties factor weighs heavily in Defendants' favor. *See id.* at 911 (setting forth relevant

---

[3] Plaintiff has not specifically controverted this fact. *See* E.D. Mo. L.R. 4.01(E).

factors).   This is primarily because, unlike most *Pickering*-balance cases, Defendant Pulley's order expressly targeted his officers' on-duty conduct, not their off-duty activities or their organizational membership as a whole.  *Cf. James v. Texas Collin County*, 535 F.3d 365, 380 (5th Cir. 2008) ("[N]eutral governmental employer policies limiting the political activity of their employees, applicable only to such employees while on duty or on the governmental employer's property, will almost always satisfy *Pickering* balancing.").  *But see, e.g.*, *Int'l Ass'n of Firefighters*, 220 F.3d at 974–75 (analyzing the reasonableness of a city ordinance prohibiting management-level public employees from joining the same union as rank-and-file employees).

Upon review of the summary judgment record, the departmental regulation at issue in this case was based on a reasonable assessment of harm to departmental efficiency rather than the "bald assertions . . . based on conclusory hearsay and rank speculation" that other courts have deemed insufficient.  *See Melton*, 147 F.4th at 904 (quoting *Burnham v. Ianni*, 119 F.3d 668, 680 (8th Cir. 1997) (en banc)).  The Court will therefore give the "considerable judicial deference" that is owed under the circumstances, *Tyler*, 72 F.3d at 570, and find that the City's interests in maintaining an effective, efficient police department outweighed Plaintiff's limited interest in conducting FOP business, particularly while he was <u>on</u> duty.  *See Maciariello v. Sumner*, 973 F.2d 295, 300 (4th Cir. 1992) (remarking that deference is required because police officers are "paramilitary—discipline is demanded, and freedom must be correspondingly denied"); *Graziosi v. City of Greenville*, 775 F.3d 731, 741 (5th Cir. 2015) (acknowledging "the wide latitude afforded police departments as paramilitary operations to discipline and otherwise regulate its

- 10 -

employees"); *see also Pappas v. Giuliani*, 290 F.3d 143, 159 (2d Cir. 2002) (Sotomayor, J., dissenting) (recognizing that, while "there are limits," "the *Pickering* test affords substantial deference to government employers, particularly in the law enforcement context").

As a result, the Court concludes that Defendant Pulley's verbal order did not violate Plaintiff's First Amendment rights, and Defendant Pulley is entitled to summary judgment on Plaintiff's remaining claim. Without an underlying First Amendment violation, the City is entitled to summary judgment as well. *See Bloodworth v. Kan. City Bd. of Police Comm'rs*, 89 F.4th 614, 628 (8th Cir. 2023) ("Because there is no cognizable constitutional violation, there is no basis for [municipal] liability.").

## IV.    CONCLUSION

For all these reasons, the Court will grant Defendants' Motion for Summary Judgment on Plaintiff's remaining claim for violation of his First Amendment rights.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Trevor Pulley and Defendant City of Dexter's now-supplemented Motion for Summary Judgment, Doc. [44], is **GRANTED**. A separate Judgment will accompany this Memorandum and Order. *See* Fed. R. Civ. P. 58(a).

Dated this 2nd day of June 2026.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE